Peñalosa & Associates, P.C.
Attorneys at Law
José Luis Peñalosa, Jr.
Arizona State Bar #14000
200 East Mitchell Dr., Suite 307
Phoenix, Arizona  85012
Telephone (602) 254-0877
Facsimile (602) 253-4061
Jose.Penalosa@AzBar.Org

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| S.P., Student, By And Through Jose Luis Peñalosa, Jr. and Nora F. Peñalosa, Parents, | ) **No. CV 2:12-CV-01193-JWS**<br>)<br>) |
| Plaintiffs, | ) **AMENDED OPENING BRIEF**<br>) |
| -V- | )<br>) |
| Scottsdale Unified School District, | )<br>) |
| Defendant. | )<br>) |
| _____ | ) |

The Plaintiffs, Jose Luis Peñalosa, Jr. and Nora F. Peñalosa, Parents, as and for S.P., a minor, by and through counsel undersigned, hereby submit the following Amended Opening Brief in support of their complaint against the Defendant, Scottsdale Unified School District ("SUSD").

I.      **LEGAL ISSUES PRESENTED:**

(A)      Whether the ALJ erred as a matter by failing to provide to ruling as to whether or not S.P. was denied a FAPE, while a student at Redfield Elementary School, where the Plaintiffs alleged that S.P. was not receiving any

1

1    speech and language services while a student at
2    Redfield in violation of her IEP;
3    (B)    Whether The ALJ erred as a matter of fact and law by
4    failing to consider the content of an e-mail exchange,
5    dated September 26, 2009 between Phyllis J. Gapen,
6    Special Education Technician, and Jan Brusca, Special
7    Education Coordinator, as conclusive evidence that the
8    Defendant's DPRC engaged in predetermination; said e-
9    mail is as follows:
10   From:    Phyllis J. Gapen
11   Sent:    Sat 9/26/2009 5:17 PM
12   To:      Jan Brusca
13   Subject: S.P.
14   FYI-S. was withdrawn form (sic) Redfield on 9-4-09 by the
15   parent.  She was approved by DPRC to be placed in the ALC with
16   Donna Schwartz.
17   From:    "Jan Brusca" <jbrusca@susd.org>
18   To:      "Phyllis Gapen" <pjgapen@susd.org>
19   Sent:    Saturday, September 26, 2009 8:10 PM
20   Subject: S.P.
21   No, she has not.  Parents enrolled her at New Way and have
22   asked us to pay for it.  We denied that request and are waiting
23   for the due process!
24   ©    Whether the ALJ erred as a matter of fact and law when
25   she failed to rule that a preponderance of evidence
26   existed in the record that demonstrated that the
27
28                                2

Defendant's DPRC members Jan Brusca, Nicole Colaiacovo,

Birgit Lurie (Invited), and Lois Healey (Invited)

approved and predetermined S.P.'s placement at the ALC

program at a DPRC  meeting prior to S.P.'s August 20,

2009  IEP meeting;

(D)       Whether the ALJ erred by fact and law when she denied

the Plaintiffs' predetermination cause of action.

## II.       APPLICABLE LAW-THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT ("IDEA"), 20 UNITED STATES CODE, (U.S.C.) §§ 1400-1482.

The law governing these legal proceedings is the

Individuals with Disabilities Education Act ("IDEA"), 20 United

States Code ("U.S.C.") §§1400-1482 (as re-authorized and amended

in 2004)[1] and its implementing regulations, 34 Code of Federal

Regulations ("C.F.R.") Part 300, as well as the Arizona Special

Education statutes, Arizona Revised Statutes ("A.R.S") §§15-761

through 15-774, and implementing rules as contained in the

Arizona Administrative Code ("A.A.C.") R7-2-401 through R7-2-406.

The Congress, when it re-authorized the IDEA in 2004, stated

the following within the "Purposes" section of 1400(d):

"The main purposes are: . . . "to ensure that all children

with disabilities have available to them a free appropriate

public education that emphasizes special education and

related services designed to meet their unique needs and

---

[1] By Public Law 108-446, known as the "Individuals with Disabilities Education Improvement Act of 2004," IDEA 2004 became effective on July 1, 2005.

3

prepare them for further education, employment and independent living" and to ensure that the rights of children with disabilities and parents of such children are protected. . ."[2]

The Plaintiffs brought forth this cause of action against the Defendant, Scottsdale Unified School District, to make it accountable for denying S.P. a ("FAPE") free appropriate public education and related services, and to vindicate the rights provided to her by the IDEA.

The IDEA serves as the cornerstone of special education law in that it provides for the development of an annual individualized education plans ("IEPs") for each eligible child. The IEP must be developed in accordance with numerous statutory procedures and requirements that ensure the protection of the student.  The IDEA grants parents the opportunity to have an active and meaningful role in the development of the IEP. ***See, 20 U.S.C. §§ 1401(14), 1414(14).***

The IDEA provides that parents must be part of the team of decision-makers that develops, reviews, and revises the IEPs. ***See, 20 U.S.C. §1414(d)(1)(B)(I).*** Accordingly, schools must ensure that parents are provided an opportunity to participate in each IEP team meeting. ***See, 34 C.F.R. §300.322.***

---

[2] 20 U.S.C. § 1400(d)(1)

**III.      APPLICABLE STATUTORY AND CASE LAW PERTAINING TO PREDETERMINATION OF SPECIAL EDUCATION SERVICES.**

With respect to placement, a child's placement must be based on the IEP. ***See,*** 34 C.F.R. §300.116(b)(2).

20 U.S.C. §1414(e) entitled "Education Placements" reads as follows:

> "Each local educational agency or State educational agency shall ensure that the parents of each child with a disability are **members of any group that makes decisions on the educational placement of their child."**

Therefore, a school district that pre-determines or pre-decides a child's services or placement before IEP team meetings and parental involvement violates the requirement to afford parents a meaningful opportunity to participate and commits a procedural violation of the IDEA. **Ms.S. ex rel. G. v. Vashon Island Sch.Dist., 337 F.3d 1115 (9th Cir. 2003).**

A procedural violation that seriously or significantly infringes on the parents' right to meaningfully participate in the development of the IEP or placement decision can rise to the level of a denial of FAPE. ***W.G. v. Board of Trustees of Target Range Sch. Dist. No. 23,*** 960 F.2d 1479 (9th Cir. 1992).

The Congress, when it last re-authorized the IDEA in 2004, added a new provision which essentially served to codify the case law pertaining to both substantive and procedural violations of the IDEA.  20 U.S.C. §1415(f)(3)(E)(ii) reads as follows:

> Procedural Issues-In matters alleging a procedural violation, a hearing officer may find that a child did

5

not receive a free appropriate public education only if the procedural inadequacies-

(I)      impeded the child's right to a free appropriate public education;

(II)     significantly impeded the parents' opportunity to participate in the decision making process regarding the provision of free appropriate public education to the parents' child; or

(III)    caused a deprivation of education benefits.

The crux of the Plaintiffs' cause of action, before the ALJ and this Court, relates to the issue of predetermination of S.P.'s placement by the Defendant, Scottsdale Unified School District.  The Plaintiffs rely upon the e-mail exchange between Phyllis J. Gapen, Defendant's Special Education Technician, and Jan Brusca, Defendant's Special Education Coordinator, as proof by a preponderance of evidence that the Defendant predetermined S.P.'s placement prior to her August 20, 2009 IEP meeting.

The e-mail exchange between Phyllis J. Gapen, Defendant's Special Education Technician, and Jan Brusca, Defendant's Special Education Coordinator, evidencing predetermination plays out as follows:

From:    Phyllis J. Gapen

Sent:    Sat 9/26/2009 5:17 PM

To:      Jan Brusca

Subject: S.P.

FYI-S. was withdrawn form Redfield on 9-4-09 by the parent.

She was approved by DPRC to be placed in the ALC with Donna Schwartz.

From:      "Jan Brusca" <jbrusca@susd.org>

To:        "Phyllis Gapen" <pjgapen@susd.org>

Sent:      Saturday, September 26, 2009 8:10 PM

Subject:   S.P.

No, she has not.  Parents enrolled her at New Way and have asked us to pay for it.  We denied that request and are waiting for the due process!

Document 21-6, Filed 10/12/12, Page 1 of 1.[3]

Just recently, the Ninth Circuit Court of Appeals, with respect to the definition of predetermination, and what actions constitute predetermination, ruled as follows:

> "Predetermination occurs when an educational agency has made its determination prior to the IEP meeting, including when it presents one placement option at the meeting and is unwilling to consider other alternatives."

**See, H.B. v. Las Virgenes,** **48 IDELR 31 (9th Cir. 2007), on remand 52 IDELR 163 (C.D. Ca. 2008), aff'd 54 IDELR 73 (9th Cir. 2010).**

The documentary and testimonial evidence in this case proves by a preponderance of the evidence that the "District Placement Review Committee" ("DPRC") meeting occurred on either August 5, 2009, or in the alternative, between August 10, 2009 to August 19, 2009, and at this meeting the Defendant' DPRC approved and predetermined S.P.'s placement at the ALC program prior to S.P.'s

---

[3] All references to the Administrative Record filed with the Court are referenced as: Document, Filed Date, Page.

August 20, 2009 IEP meeting that her parents attended. **See**, Document 1-2, Filed 06/05/12, Page 1 of 1; Document 21, Filed 10/12/12, Pages 1-75; Document 21-2, Filed 10/12/12, Page 1 of 1; Document 21-3, Filed 10/12/12, Pages 1-3; Document 21-5, Filed 10/12/12, Page 1 of 1; and Document 21-6, Filed 10/12/12, Page 1 of 1.

The Defendant's action(s) amount to both a substantive and a procedural violation of the IDEA. The Defendant's action(s) effectively deprived the Plaintiffs, the parents of S.P., of any meaningful participation in the IEP process, and the Defendant's predetermination caused substantive harm and therefore deprived S.P. of a FAPE.

The Courts have found, in a variety of contexts, that certain actions of the school district's IEP team amount to predetermination. For example, a district court determined that predetermination occurred where the school district wrote a series of letters, prior to the IEP meeting, that focused on a change of placement. **See, Speilberg ex rel. Speilberg v. Henrico County Public Schools, 853 F.2d 256 (4th Cir. 1988)**.

In another case, the school district was responsible or guilty of predetermination where it independently developed a proposed IEP that would place the student in a pre-existing and predetermined program. **See, W.G. v. Board of Trustees of Target Range School District No. 23, 960 F.2d 1479 (9th Cir. 1992).**

In **Deal v. Hamilton Board of Education,** 392 F.3d 840 (6th Cir. 2004), **cert denied, 546 U.S. 936,** the court found that predetermination had occurred where the school district

8

impermissibly predetermined the child's educational program and failed to meaningfully include the child's parents at the IEP meetings resulting in the denial of a FAPE.

**IV.   STANDARD OF REVIEW OF STATE ADMINISTRATIVE PROCEEDINGS.**

With respect to this instant action, the district court shall receive the records of the administrative proceedings; shall hear additional evidence at the request of the party; and basing its decision on the preponderance of the evidence, shall grant such relief as the Court deems is appropriate.  20 U.S.C. §1415(i)(2)(B).

The IDEA is unique as it pertains to federal court review in that the Court can afford less deference to state administrative proceedings than they do in most instances of judicial review.  In most cases, a reviewing federal court is confined to the administrative record and is held to a highly deferential standard of review.  ***See, E.M. ex rel. E.M. v. Pajaro Valley Unified Sch. Dist. Office of Administrative Hearings,*** 652 **F.3d 999 (1005) (9th Cir. 2011).**

Thus, the Court, as a reviewing body, should render an independent decision based on the preponderance of the evidence but it should also give "due weight" to the determinations made during the state administrative process.  ***Bd. Of Educ. Of the Hendrick Hudson Cent. Sch. Dist. V. Rowley,*** 458 U.S. 176, 206 (1982). The amount of weight or deference due to administrative findings depends upon whether the finding is based upon educational expertise.  ***McClaughlin v. Holt Pub. Sch. Bd. Of Educ.*** 320 F.3d 663, 669 (6th Cir. 2003).  It should be noted that

9

less weight is due to an agency's determinations on matters for which educational expertise is not relevant because a federal court is just as well suited to evaluate the situation." ***Id.***

Accordingly, this modified de novo standard of review requires "a district court to make findings of fact based upon a preponderance of evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings." ***Knable v. Bexley City Sch. Dist.,*** 238 F.3d 755, 764 (6th Cir. 2001).

## V.   ANALYSIS OF THE ALJ'S DECISION.

Under the heading of Determination, the ALJ states as follows:

> "The Administrative Law Judge has considered the hearing
> record, including the testimony and exhibits,[4]
> and now makes the following Findings of Fact, Conclusions
> of Law, and Order finding that Petitioners have not met
> the burden to show that District failed to offer FAPE to
> Student, and that Petitioners have not met the burden to
> show that District denied FAPE through an alleged
> procedural failure of predetermination of the offered
> educational placement.   As a result of these
> determinations, the Petitioners are not entitled to the

---

[4] The ALJ's footnote reads as follows-"The Administrative Law Judge has read each witness-referenced Exhibit, even if not mentioned in this Decision.  The Administrative Law Judge has also considered the testimony of every witness, even if not mentioned in this Decision.

10

relief sought and Petitioners' complaint should be dismissed."

Document 1-3, Filed 06/05/12, Pages 1-29.

While the Court indicates that it reviewed all of the material, it is posited that the Court, because of the voluminous record, might have overlooked important facts that would have impacted the decision, and the final result of this matter. The Plaintiffs, within this section, will bring to light the Administrative Law Judge's errors and oversights. Had the Court considered these facts, it is posited that the Court's decision would have been different by operation of law.

**VI.    LEGAL ARGUMENTS.**

**A.    THE ALJ ERRED WHEN IT FAILED TO ISSUE A RULING AS TO WHETHER OR NOT S.P. WAS DENIED IEP SERVICES AT REDFIELD WHICH CONSTITUTED A DENIAL OF A FAPE.**

On August 18, 2011, the Plaintiffs filed a due process complaint against the Defendant, Scottsdale Unified School District, with the Arizona Department of Education. Within the complaint, the Plaintiffs alleged, within allegation number 116, the following:

"Within their August 14, 2009 letter, the Petitioners expressed their concerns to the Respondent's representative, Nicole Colaiacovo, stating that "I have expressed to you my concern that "time is of the essence" here with regard to S.P.'s special education. For the past week, she has attended school in the K/1 classroom with twenty-five (25) other students. During the course of this week, she has not received any LRC class time nor speech and

11

language therapy.  Unfortunately, S.P. is going thru the motions of attending school and not learning anything."

Document 22-5, Due Process Complaint, Filed on 10/12/2012.

The Defendant, by and through its attorney of record, Jessica A. Sanchez, stated as follows in response:

> ***District's Response-The District acknowledges that Petitioners expressed their concerns; however, S.P.'s IEP, dated May 11, 2009, was being implemented at this time.  S.P. was receiving services according to her IEP. In the meantime, the District continued to work with Petitioners regarding their concerns about S.P.'s placement."***

Document 22-11, Notice of Filing Response, Filed on 10/12/2012.

With respect to this matter, the ALJ made certain "Findings Of Fact."  The ALJ ruled, in particular part, with respect to the completion and effective date of S.P.'s IEP, as follows:

> "However, the May 11, 2009 IEP was completed at that time with regard to proposed services for Student and continued to indicate LRC special education services for Student."  Document 1-3, Page 5, Lines 12-14, Filed on 10/12/12.

> Furthermore, according to the ALJ, the "Student's IEP was effective on May 12, 2009."  Document 1-3, Page 5, Lines 15-16.

While the ALJ made a direct finding that S.P.'s IEP was effective, the Court completely failed to address the Plaintiffs' allegation and cause of action that S.P. was denied FAPE because the Defendant failed to deliver speech and language services while she was a student at the Defendant's Redfield Elementary School from August 10, 2009 to September 4, 2009.

At the due process hearing, the Defendant called Kathleen Marie Gustine ("Gustine"), Speech and Language pathologist at

Redfield Elementary School during the 2009-2010 school year, to provide testimony.  Document 1-3, Filed on 06/05/12, Page 2.

Yet, a review of the ALJ's written decision with respect to this issues reveals that she either completely ignored or overlooked issuing a decision as to whether or not the Defendant denied S.P. by failing to provide her with speech and language services from August 19, 2009 to September 4, 2009.

The Defendant, Scottsdale Unified School District, is required by the IDEA to satisfy the IDEA's substantive requirements by providing all eligible students with a free appropriate public education, or FAPE, which is defined as:

"special education and related services that-(A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; © include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program required under 20 U.S.C. §1414(d).

In this particular case, the ALJ failed, by way of her written decision, to render a specific finding as to whether or not the Defendant denied FAPE to S.P., based upon the allegations contained within the Plaintiffs' due process complaint, as it pertained to whether or not the Defendant followed the IEP's requirement of speech and language services pertaining to S.P. during the period from August 18, 2009 to September 4, 2009.

The Plaintiffs, once again, within their instant complaint, alleged as follows in allegation number thirty-three (33):

> "While S.P. was a special education student at the Defendant's Redfield Elementary School, Defendant failed to provide S.P. with any speech and language services in violation of the IDEA." Document 1, Filed 06/05/12, Page 8.

The Defendant, by and through Attorney Jessica S. Sanchez, answered as follows:

> "The District has insufficient information as to the truth or falsity of this claim, and therefore, denies the allegations of ¶33 of the Complaint. Affirmatively allege that Plaintiff's (sic) allegation was not raised in the Due Process Complaint and was not timely and fully administratively exhausted before the Office Of Administrative Hearings." Document 7, Filed On 06/29/12, Page 5.

As previously demonstrated, the Plaintiffs clearly raised this issue in both a letter, dated August 14, 2009, and allegation number one hundred sixteen (116) of the due process complaint.

Therefore, with respect to this particular issue, the Court should remand the record to the ALJ for the issuance of a decision with respect to this particular matter.

B.  **THE E-MAIL EXCHANGE BETWEEN PHYLLIS J. GAPEN, SPECIAL EDUCATION TECHNICIAN, AND JAN BRUSCA, SPECIAL EDUCATION COORDINATOR, DATED SEPTEMBER 26, 2009, SERVES AS PROOF BY A PREPONDERANCE OF THE EVIDENCE THAT THE DEFENDANT APPROVED AND PREDETERMINED S.P.'S PLACEMENT AT THE ALC PROGRAM PRIOR TO HER AUGUST 20, 2009 IEP MEETING, AND THAT THE DEFENDANT DELIVERED SAID PLACEMENT DECISION TO THE PLAINTIFFS AT S.P.'S AUGUST 20, 2009 IEP MEETING THEREBY CAUSING HER A DENIAL OF A FAPE, AND RENDERING THE IEP PROCESS MEANINGLESS.**

The crux of the Plaintiffs' due process claim pertained to the issue of predetermination of S.P.'s special education placement. The Plaintiffs alleged within their due process complaint, and during the course of the due process hearing, that

the Defendant engaged in predetermination.  The Plaintiffs relied upon the un-controverted email exchange from Phyllis J. Gapen to Jan Brusca, and from Jan Brusca to Phyllis J. Gapen as admissions that prove by a preponderance of the evidence that the Defendant predetermined  S.P.'s placement prior to the August 20, 2009 IEP meeting.

Yet, a review of the ALJ's written decision, specifically the Findings of Fact section, reveals that the Court completely overlooked or ignored the e-mail exchange between the Defendant's employees, Phyllis J. Gapen-Special Education Technician, and Special Education Coordinator Brusca, which unequivocally serves to demonstrate by a preponderance of the evidence that the Defendant, Scottsdale Unified School District, approved and predetermined S.P.'s placement at the Academic Learning Center ("ALC").  **See**, Document 1-3, Filed on 06/05/12, Pages 1-29.

The e-mail exchange between Phyllis J. Gapen, dated 09/26/2009, and Jan Brusca, Special Education Coordinator, with respect to S.P., reads as follows:

From:     Phyllis J. Gapen

Sent:     Sat 9/26/2009 5:17 PM

To:       Jan Brusca

Subject:  S.P.

FYI-S. was withdrawn form (sic) Redfield on 9-4-09 by the parent.  She was approved by DPRC to be placed in the ALC with Donna Schwartz.

1    From:      "Jan Brusca" <jbrusca@susd.org>

2    To:        "Phyllis Gapen" <pjgapen@susd.org>

3    Sent:      Saturday, September 26, 2009 8:10 PM

4    Subject: S.P.

5    No, she has not.  Parents enrolled her at New Way and have
6    asked us to pay for it.  We denied that request and are waiting
7    for the due process!

8    Document 1-2, Filed 06/05/12, Page 1 of 1; Document 21-6,
9    Filed 10/12/12, Page 1 of 1.

10   The above-mentioned e-mail exchange between Phyllis J. Gapen
11   and Jan Brusca constitutes the "smoking gun" with respect to this
12   case as it serves to prove, by whatever evidentiary standard, by a
13   preponderance of the evidence (current applicable case standard),
14   clear and convincing evidence (civil case standard), or beyond a
15   reasonable doubt (criminal case standard) that the Defendant
16   approved and predetermined S.P.'s placement prior to the August
17   20, 2009 IEP meeting, and that the DPRC's placement decision was
18   delivered to the Plaintiffs on August 20, 2009 at an IEP meeting.
19   As result, the Defendant denied S.P. a FAPE.

20   Interestingly, Jan Brusca, within her response, makes no
21   effort to either correct, amend, or deny the contents and veracity
22   of the e-mail sent to her by Phyllis J. Gapen regarding the DPRC's
23   approval of S.P.'s placement in the ALC program.

24   Special Education Coordinator Brusca's written comments
25   should mean the following to the Court:

26   1.    That she had full knowledge that the DPRC approved and
27         predetermined S.P.'s placement in the ALC program;

28                                   16

2.   That she was a participatory member of the DPRC Committee that approved S.P.'s placement in the ALC program prior to S.P.'s August 20, 2009 IEP meeting;

3.   That she did not object to the truth asserted by Phyllis J. Gapen that the DPRC approved S.P.'s placement in the ALC program prior to S.P.'s August 20, 2009 IEP meeting;

4.   That as a public servant, and the protector of children, she predetermined S.P.'s placement and was proud of it, and that she was happily awaiting the parents' due process complaint.

The Court, even utilizing its modified de novo standard of review, can easily arrive at the conclusion that the ALJ erred as a matter of law when it failed to consider the above-mentioned e-mail exchange as proof by a preponderance of the evidence that the Defendant approved and predetermined S.P.'s placement in violation of 20 U.S.C. §§1400-1482, 20 U.S.C. §1414(e), and **H.B. v. Las Virgenes, supra.**

Wherefore, the Plaintiffs request that the Court enter an order in accordance with the above-mentioned evidence that the Defendant approved and predetermined S.P.'s placement at the ALC program prior to her August 20, 2009 IEP meeting, denied her a FAPE, and that the Defendant rendered the IEP process meaningless.

**C.   THE DEFENDANT, BY AND THROUGH THEIR OWN ATTORNEYS, ADMITTED THAT THE E-MAIL AUTHORED BY PHYLLIS J. GAPEN, SPECIAL EDUCATION TECHNICIAN, AND SENT TO JAN BRUSCA, SPECIAL EDUCATION COORDINATOR, DATED SEPTEMBER 26, 2009, SERVES AS PROOF BY A PREPONDERANCE OF THE EVIDENCE THAT THE DEFENDANT APPROVED AND PREDETERMINED S.P.'S PLACEMENT AT THE ALC PROGRAM PRIOR TO HER AUGUST 20, 2009 IEP MEETING WHERE THE DEFENDANT ADMITTED THAT THE E-MAIL WAS "A TRUE COPY" AND THAT "THE CONTENT OF WHICH, SPEAKS FOR ITSELF." THEREFORE, AS A**

17

**COROLLARY, THE DEFENDANT ADMITTED THAT IT DENIED S.P. A FAPE AND RENDERED THE IEP PROCESS MEANINGLESS.**

Within their current complaint, the Plaintiffs alleged, with respect to the issue of predetermination, in pertinent part, as follows:

**Complaint Allegation 12:** "Between August 11, 2009 and August 19, 2009, the Defendant's representatives, Lois Healey (Special Education Director), Jan Brusca (Special Education Coordinator), Birgit Lurie (Lead District Psychologist), and Nicole Colaiacovo (Redfield School Psychologist) conducted a "secret" IEP meeting referred to as a "District Placement Review Committee" ("DPRC") meeting at Defendant's Special Education Office located at the Mohave Education Complex, Scottsdale, Arizona." Document 1, Filed 06/05/12, Page 4.

**Defendant's Response To Allegation #12:** "Admit that Nicole Colaiacovo attended a District Placement Review Committee (DPRC) meeting at some time prior to August 20, 2009, which would have been located the Mohave District Annex Building in Scottsdale, Arizona. Deny the remaining allegations of ¶12 of the complaint." Document 7, Filed 06/29/12, Pages 2-3.

**Complaint Allegation 17:** At the conclusion of the secret DPRC, the Defendant's representatives, Lois Healey, Jan Brusca, Birgit Lurie, and Nicole Colaiacovo unilaterally pre-determined and approved S.P.'s special education placement in its "ALC" program with Special Education Teacher Donna

18

Schwartz at Laguna Elementary School as confirmed by a September 26, 2009 email from Phyllis A. Gapen, Special Education Data Tech. to Jan Brusca, Special Education Coordinator." Document 1, Filed 06/05/12, Page 5.

**Defendant's Response To Allegation #17.** "Admit that Exhibit B is a copy of a September 26, 2009 e-mail between Jan Brusca and Phyllis Gapen, which has been written upon by the Plaintiffs. Deny remaining allegations of ¶ 17 of the Complaint. Affirmatively allege that Phyllis Gapen, special education data technician, has never been involved in any decisions or meetings concerning Student or her IEP." Document 7, Filed 06/29/12, Page 3.

**Complaint Allegation 37.** On September 26, 2009, Phyllis J. Gapen, Special Education Data Tech with Defendant, Scottsdale Unified School District, drafted and forwarded an e-mail to Jan Brusca, the Defendant's special education coordinator, confirming that the Defendant had "predetermined" S.P.'s special education placement. The e-mail reads as follows: FYI-S.P. was withdrawn form (sic) Redfield on 9-4-09 by the parent. She was "approved" by "DPRC" to be "placed" in the ALC with Donna Schwartz." She has not enrolled @ Laguna." Attached hereto as Exhibit "B" and incorporated herein by this reference is a copy of Defendant's September 26, 2009 confirmation e-mail." Document 1, Filed 06/05/12, Page 9.

**Defendant's Response To Allegation #37.** "Admit that Exhibit B is a true copy of an e-mail that was drafted by Phyllis

19

Gapen and sent to Jan Brusca on September 26, 2009, the content of which, speaks for itself.   Deny the remaining allegations of ¶ 37 of the Complaint. Affirmatively allege that Phyllis Gapen, special education data technician, has never been involved in any decisions or meetings concerning Student or her IEP." Document 7, Filed 06/29/12, Page 7.

When the fact finder juxtaposes the Defendant's answers to the instant complaint as to against the e-mail exchange between Phyllis J. Gapen, Special Education Technician, and Special Education Coordinator Brusca, it should be extremely troubling because the documentary evidence completely contradicts the Defendant's answer.   Furthermore, the Defendant's answers should shock one's conscience given that they had, from the beginning of the case, in their exclusive possession the smoking-gun e-mail between their own employees whom both confirm that the DPRC approved S.P.'s placement at the ALC program.

The e-mail authored by Phyllis J. Gapen, Special Education Technician, and directed to Jan Brusca, Special Education Coordinator, serves as testimonial evidence that the Defendant predetermined S.P.'s placement at the ALC program.   The Defendant's own admission, by way of its attorney's answer to allegation number 12, places Nicole Colaiacovo at the DPRC meeting.   Lastly, the Defendant's own admission, by way of its own attorneys, that the e-mail authored by Phyllis J. Gapen and delivered to Jan Brusca is a true copy and "the content of which, speaks for itself" serves as proof that by a preponderance of the

evidence that the Defendant predetermined S.P.'s placement at the ALC program thus denying her a FAPE, and it served to render meaningless the IEP process.

The Defendant's 11th hour affirmative defense that "Phyllis Gapen, special education data technician, has never been involved in any decisions or meetings concerning Student or her IEP" is another attempt to confuse the fact finder and shield the truth that the DPRC Committee unilaterally approved and predetermined S.P.'s placement at the ALC program.  The Plaintiffs did not allege, in any manner whatsoever, that Phyllis J. Gapen was a member of the DPRC Committee nor S.P.'s August 20, 2009 IEP team. The Plaintiffs simply alleged that Special Education Technician, Phyllis J. Gapen, wrote an e-mail, based upon her review of S.P.'s special education file, and/or a written document produced by Jan Brusca, or other DPRC members, that the DPRC approved S.P.'s placement at the ALC program.

More importantly, the Defendant, by and through its own attorneys, admitted that the matters asserted therein were true when it stated "the content of which, speaks for itself." Document 7, Filed 06/29/12, Page 5.  Translation, the Defendants, by and through their own attorneys, admitted to the Court and the fact finder that the Defendant predetermined S.P.'s placement at the ALC program prior to S.P.'s August 20, 2009 IEP meeting, and that the Defendant's then delivered their predetermined placement decision to the Plaintiffs and S.P. on August 20, 2009.

Based upon the Defendant's own admission, by and through its own attorneys, that the e-mail authored by Phyllis J. Gapen to Jan

Brusca, Special Education Coordinator is a "true copy" and "the content of which, speaks for itself" is an admission that serves to prove by a preponderance of the evidence that the Defendant predetermined S.P.'s placement.

**D.** **PHYLLIS J. GAPEN'S DEPOSITION TESTIMONY, DATED 10/01/12, SERVES TO PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT THE DEFENDANT APPROVED AND PREDETERMINED S.P.'s PLACEMENT AT THE ALC PROGRAM PRIOR TO HER AUGUST 20, 2009 IEP MEETING THUS DENYING HER A FAPE, AND RENDERING THE IEP PROCESS MEANINGLESS.**

During the course of this instant case, the Plaintiffs, with the approval of the Court, were able to take the deposition of Phyllis J. Gapen for purposes of questioning her with respect to the circumstances surrounding her e-mail exchange, dated September 26, 2009, with Jan Brusca, Special Education Coordinator.

The initial part of Phyllis J. Gapen's testimony pertained to her employment with the Defendant, and the individuals that she provides services for within the special education department. Her testimony, in pertinent part, is as follows:

Q.   Okay. Are you currently employed?

A.   Yes.

Q.   Where are you employed at?

A.   Scottsdale Unified School District.

Q.   In what capacity, ma'am?

A.   My title is administrative support coordinator.

Q.   What department are you employed with in the school district?

A.   Special education.

Q.   And how long have you been employed by the Defendant,

Scottsdale Unified School District?

A.   This is my 25th year.

Q.   How many years, ma'am, have you worked in the special education department?

A.   I believe 22 years.

Q.   Who is your supervisor, ma'am?

A.   At the present time, Mary Lou Muccino.

Q.   Back in 2009, who was your supervisor, ma'am?

A.   Lois Healey.

Q.   Okay. And please identify her for us.

A.   She was the director of special education.

Q.   Did you have any other supervisors at that time?

A.   No direct supervisors at that time. I do-did work for other coordinators also.

Q.   Okay.  What other coordinators did you work for, ma'am?

A.   At that time, it was Jan Brusca. . .

Q.   You mentioned Jan Brusca.  Do you remember her, ma'am?

A.   Yes, I do.

Q.   Okay.  Was she your supervisor at any one time back in 2009? I'll be specific.

A.   She did not directly supervise me.

Q.   Okay.  Do you work for her and share any responsibilities?

A.   I did work for her.

Q.   What did you specifically do for Jan Brusca?

A.   I would give her class lists of students that she supervised.

23

Q.    Anything else?

A.    That would be my main duty with her.

Document 21, Filed 10/12/12, Pages 6-8.

The Plaintiffs' counsel then questioned her with respect to the September 26, 2009 e-mail exchange between herself and Jan Brusca, Special Education Coordinator, which reads as follows:

From:      Phyllis J. Gapen

Sent:      Sat 9/26/2009 5:17 PM

To:        Jan Brusca

Subject:   S.P.

FYI-S. was withdrawn form (sic) Redfield on 9-4-09 by the parent.  She was approved by DPRC to be placed in the ALC with Donna Schwartz.

From:      "Jan Brusca" <jbrusca@susd.org>

To:        "Phyllis Gapen" <pjgapen@susd.org>

Sent:      Saturday, September 26, 2009 8:10 PM

Subject:   S.P.

No, she has not.  Parents enrolled her at New Way and have asked us to pay for it.  We denied that request and are waiting for the due process! Document 21-6, Filed 10/12/12, Page 1 of 1.

Q.    Okay. I'd like to show you this document now. And I
      would like to present this-
      Would you mark this, please?
      (Deposition Exhibit 1 was marked for identification).

Q.    I'll share this copy with your attorney.  I'm sure
      Attorney Sanchez has seen that.

24

1              In front of you has been identified as Exhibit
2       Number 1, ma'am.  Have you seen this document
3       before?
4    A.   It was not exactly the way I wrote it, but I have seen
5       it.
6    Q.   All right. I'll get to that a little bit later.
7              Now, let's start up on the left-hand side where it says
8    "From."  Can you please read that?
9    A.   "Phyllis Gapen, pgapen@susd.org."
10   Q.   Is that you, ma'am?
11   A.   Yes, it is.
12   Q.   Does that continue to be your email?
13   A.   Yes.
14   Q.   And was that your email back in 2009, ma'am?
15   A.   Yes.
16   Q.   Who is it to?
17   A.   Jan Brusca, jbrusca@susd.org.
18   Q.   Okay. And then directly under that it says "Sent." What
19       day is there?
20   A.   Saturday, September 26, 2009, at 5:17 p.m.
21   Q.   And subject?
22   A.   It says "S.P." But it would have said S.P.
23   Q.   Thank You.
24             And directly under that, can you please read what is
25       written there?
26   A.   FYI. S.P. was withdrawn from Redfield on 4-9-09 (sic) by
27       the parent.  She was approved by DPRC to be placed

1    in the ALC with Donna Schwartz.  She has not

2    enrolled at Laguna.

3  Q.  And signed?

4  A.  Phyllis J. Gapen, Scottsdale Unified School District,

5    Special Education Data Technician. Phone, 480-

6  Q.  Did you write this, Phyllis?

7  A.  Yes, I did.

8  Document 21, Filed 10/12/12, Pages 8-10.

9    After admitting that she wrote this confirmation e-mail to

10  Jan Brusca-Special Education Coordinator, Phyllis J. Gapen

11  provided testimony as to why she authored the e-mail, and where

12  did she get the information that indicated that the DRPC members

13  approved S.P.'s placement at the ALC program at Laguna.

14  Q.  And what would compel you to write this to Jan Brusca?

15  A.  I keep a database with all of our special ed students.

16    And the ALC program is limited to a certain number of

17    students.  And I would be letting her know that S.P.

18    was not going to placed so that she would know that

19    there would be additional room in the classroom for

20    another student.

21  Q.  Okay. Going to the second sentence of that document,

22    which reads, "She was approved by DPRC to be placed in

23    the ALC with Donna Schwartz," period.  Where did you get

24    that information from?

25  A.  It would be from a DPRC note.

26  Q.  Who would share with you the DPRC with you, ma'am?

27  A.  It would be either one of the coordinators or the

28

director.

Document 21, Filed 10/12/12, Pages 10-11.

Attempting to limit her damaging testimony, Phyllis J. Gapen caught herself and tried to describe and define the use of the word "approved" to really mean "options" reminiscent of the famous deposition words of "depending what your definition of the word "is" "is."  However, Plaintiffs' counsel, upon further questioning, was able to get the witness to admit again that the DPRC approved S.P.'s placement at the ALC program according to the following testimony:

Q.  Look at what you wrote there again, ma'am.  I'll read it again for you. It doesn't say "options." "She was approved by the DPRC to be placed in the ALC with Donna Schwartz." Do you agree with that? And do you agree that you wrote that?

A.  I agree that I wrote it.

Q.  Okay. So what document did you review that indicated that she was approved by the DPRC for this program?

A.  It would have been notes from the DPRC.

Q.  Specifically, were those notes given to you, ma'am?

A.  Yes.

Document 21, Filed 10/12/12, Pages 11-12.

With respect to what is the DPRC and who scheduled the meetings, the witness testified, in pertinent part, as follows:

Q.  What is the DPRC, Ms. Gapen?

A.  District Placement Review Committee.

Q.  You've used the word "placement."  Is that correct?

A.    Yes.

Q.    Is placement discussed there?

A.    Placement is discussed.

Q.    Who schedules those meetings, ma'am?

A.    I schedule them.

Document 21, Filed 10/12/12, Page 13. See, Document 21-3 entitled "District Placement Review Committee Information," Filed 10/12/12, Pages 1-3.

Very alarmingly, and in an effort to conceal the illegality of the DPRC's predetermined placement decision regulating S.P. to the ALC program, Phyllis J. Gapen testified with respect to record retention of the notes from the DPRC meeting, in pertinent part, as follows:

Q.    Do you keep separate files for yourself for all of the students?

A.    No, I do not.

Q.    Was the memo that you received indicating that S.P. was approved by DPRC to be placed in ALC with Donna Schwartz in her file at the school?

Ms. Sanchez: Foundation.

Mr. Penalosa: You can answer the question.

The Witness: I don't think so.

Q.    After you receive a memo like that, indicating that a student was approved for placement by the DPRC, what do you do with that memo?

Ms. Sanchez: Foundation

The Witness: Are you speaking of this memo?

28

1       Mr. Penalosa: That's correct.

2       The Witness: I delete it.

3   Document 21, Filed 10/12/12, Pages 14-15.

4   With respect to the date that the DPRC Committee met to
5   discuss and decide S.P.'s placement, Phyllis J. Gapen testified,
6   in pertinent part, using Jan Brusca's August, 2009 calendar as a
7   guide, as follows:

8       Q.   Now, you're the person that you said schedules the DPRC
9            meetings.  Is that correct?

10      A.   That's correct.

11      Q.   All right.  And when you schedule that, you have a
12           master calendar, ma'am? In other words, do you control
13           the calendar of Jan Brusca and Lois Healey?

14      A.   It's a regularly scheduled meeting.

15      Q.   When does that occur?

16      A.   Every Monday between 12:30 and 3:00.

17      Q.   Okay.  Every Monday of a calendar month?

18      A.   During the school year.

19      Q.   Do these happen to occur once a month or every Monday as
20           you're saying?

21      A.   Every Monday.

22      Q.   Has that been the tradition at Scottsdale Unified School
23           District?

24      A.   Yes.

25      Q.   All right.  By the way, do you keep Jan Brusca's
26           calendar?

27      A.   No, I do not.

28                              29

Q.   Before you, Ms. Gapen, is a document.  It's a calendar
     dated August of 2009.  In the bottom left-hand corner,
     if you review that, it says "Jan Brusca."  This is the
     calendar that she presented to us during the due process
     claim, ma'am.
     Have you ever seen this before?

A.   I have.

Q.   Do you have anything to do with drafting this document,
     ma'am?

A.   No, I do not.

Q.   Let's go to Monday, August 10, 2009.  Do you see an
     entry for "DPRC meeting" there, ma'am?

A.   No, I do not.

Q.   Let's go to Monday, August 17, 2009.  Do you see an
     entry for "DPRC meeting" there?

A.   No, I do not.

Q.   Let's go to Monday, August 24, 2009.  Do you see an
     entry for "DPRC meeting," ma'am?

A.   No, I do not.

Q.   Let's go to the final Monday, which is August 31st, 2009.
     Do you see an entry date there for "DPRC meeting"?

A.   No, I do not.

Q.   Okay. But you just told us they occur on Monday. Is that
     correct?

A.   Yes, they do.

Q.   Perhaps you're incorrect, you're wrong about your
     evaluation?

30

A.   No, I'm not.

Q.   All right. Now, let's go to this date, ma'am.  Look at the calendar there for Wednesday, August 5th, 2009.  Can you read the entry there where it says "12:30"?

A.   Yes, I can.

Q.   Read that for us, please.

A.   It says "DPRC."

Q.   12:30 to 3:00 p.m. DPRC. Is that correct?

A.   Yes.

Q.   Did you schedule that meeting?

A.   Yes, I did.

Q.   So it's true they always don't occur on Mondays, right?

A.   That's correct.

Q.   Was school in session at that time?

A.   I don't recall the start date of that year.

Q.   If I told you that the start date was Monday, August 10th, 2009, at that particular school year, would you agree with that?

A.   Yes.

Q.   All right.  So the week prior to that, there's a DPRC meeting.  Is that correct?

A.   Yes.

Q.   All right. So who would traditionally, based upon your experience working at the Scottsdale Unified School District, would appear at that meeting?

A.   Usually the coordinators, the director of special education, the lead psychologist.

31

Q.   Okay. If school is not even in session, why the need for
     a DPRC meeting?
     Ms. Sanchez: Foundation.
     The Witness: Because students have already registered.
     And they come in needing services, and we want to
     try and get them started before the first day of
     school.
Q.   Is it possible that the DPRC discussed my daughter's
     placement on August 5, 2009, ma'am?
     Ms. Sanchez: Foundation
     The Witness: I don't know.
Q.   Is it possible, yes or no?
A.   Its-yes
     Ms. Sanchez: Foundation.

Document 21, Filed 10/12/12, Pages 17-21; Document 21-2,
Filed 10/12/2012, Page 1 of 1.

Based upon Phyllis J. Gapen's testimony, it is clear that the
Defendant conducted a DPRC meeting on either Monday, August 3,
2009, Wednesday, August 5, 2009, Monday, August 10, 2009, or
Monday, August 17, 2009 prior to S.P.'s Thursday, August 20, 2009
IEP meeting.  The Defendants, by and through their attorneys, have
already admitted that the Defendant conducted a DPRC meeting with
respect to S.P. prior to her August 20, 2009 IEP meeting.  Special
Education Coordinator Jan Brusca's schedule for August, 2009,
along with the testimony of Phyllis J. Gapen, indicates that a
"DPRC" meeting was scheduled and occurred on August 5, 2009
between 12:30-3:00 p.m. at the District's Mohave Complex.  Thus,

It is posited that the DPRC Committee meeting, with respect to
S.P., either occurred before the start of the academic school
year, or between August 10, 2009 thru August 19, 2009, where the
DPRC, at that time, approved and predetermined S.P.'s placement at
the ALC program as verified by the e-mail exchange between Phyllis
J. Gapen, Special Education Technician, and Special Education
Coordinator Brusca, which reads as follows:

From:     Phyllis J. Gapen

Sent:     Sat 9/26/2009 5:17 PM

To:       Jan Brusca

Subject:  S.P.

FYI-S. was withdrawn form (sic) Redfield on 9-4-09 by the
parent.  She was approved by DPRC to be placed in the ALC with
Donna Schwartz.

From:     "Jan Brusca" <jbrusca@susd.org>

To:       "Phyllis Gapen" <pjgapen@susd.org>

Sent:     Saturday, September 26, 2009 8:10 PM

Subject:  S.P.

No, she has not.  Parents enrolled her at New Way and have
asked us to pay for it.  We denied that request and are waiting
for the due process!  Document 1-2, Filed 06/05/2009, Page 1 of 1;
Document 21-6, Filed 10/12/12, Page 1 of 1.

In terms of the persons that attended the DPRC meeting
pertaining to S.P., Phyllis J. Gapen testified, in pertinent part,
as follows:

Q.   All right.  So who traditionally, based upon your 20-
     something years of experience working at the Scottsdale

33

Unified School District, would appear at that meeting, ma'am?

A.    Usually the coordinators, the director of special education, the lead psychologist.

Q.    So back in 2009, the director of special ed was Lois Healey, correct?

A.    Correct.

Q.    And you also mentioned Jan Brusca was a program coordinator at that time, correct?

A.    Correct.

Q.    Would she have been at that meeting, ma'am?

      Ms. Sanchez: Foundation.

      The Witness: She would have been invited.

Q.    Okay.  Would Birgit Lurie have attended that meeting, ma'am?

      Ms. Sanchez: Foundation.

      The Witness: She is invited.

Document 21, Filed 10/12/12, Pages 21-22.

With regard to the reply e-mail that she received from Special Education Coordinator Brusca, Phyllis J. Gapen testified, in pertinent part, as follows:

Q.    Exhibit Number 6 is before you, Ms. Gapen. And can you read the heading, please, up at the top left-hand corner?

A.    Jan Brusca, jbrusca@susd.org.

Q.    And who is the email to?

A.    Phyllis Gapen, pgapen@susd.org

34

Q.   That's you, correct?

A.   Correct.

Q.   And it was sent what day?

A.   September 26, 2009, at 8:10 p.m.

Q.   And subject matter?

A.   S.P.

Q.   Okay.  So it appears that she sent you an email after a
     response to your email that same day, that same
     afternoon.  Is that correct?

A.   It was later in the evening.

Q.   Can you read what she wrote?

A.   No, she has not.  Parents enrolled her at New Way and
     have asked us to pay for it.  We denied that request and
     are awaiting for the due process."

Q.   Exclamation mark, correct?

A.   Correct.

Q.   All right. Signed?

A.   Janet R. Brusca, Scottsdale Unified School District,
     Special Education Coordinator, Preschool and Self
     Contained Programs.  Office 480-484-5037. Fax, 480-484-
     5106, jbrusca@susd.org.

Q.   Do you remember receiving that, ma'am?

A.   No, I don't.

Q.   In her response, do you see anywhere in there where she
     tells you not to use the word "approved"?

A.   No.

Q.   In her response, do you see anywhere in there where she
     says that the DPRC did not approve S.P.'s placement?

     Ms. Sanchez: Foundation.

By Mr. Penalosa

Q.   At ALC?

A.   No.

Q.   Well, once you traditionally get a response like this,
     knowing the status of a student that did not go to that
     program, what do you do next?

     Ms. Sanchez:   Form.

     The Witness: I delete the email.

Document 21, Filed 10/12/12, Pages 48-50; Document 21-6,
Filed 10/12/12, Page 1 of 1.

After reviewing the testimony of Phyllis J. Gapen, Special
Education Technician, and a twenty-five (25) year employee of the
Defendant, one can reasonably arrive at the following opinions and
conclusions:

1.   That she scheduled the DPRC meetings for the District;

2.   That Nicole Colaiacovo, School Psychologist, for
     Redfield Elementary called her Phyllis J. Gapen, during
     the last week of July, 2009 or the first week of August,
     2009, to schedule a DPRC meeting for S.P. with the
     District;

3.   That Phyllis J. Gapen scheduled the DPRC meeting, with
     respect to S.P., for Wednesday, August 5, 2009
     approximately five (5) days before the start of the
     academic school year based upon the August, 2009

36

schedule produced by Jan Brusca;

4.   That Phyllis J. Gapen received, on August 5, 2009, the decision of the DPRC members, about thirty (30) minutes after the conclusion of the meeting, wherein the District "approved" S.P.'s placement at the ALC program;

5.   That she, after inputting the DPRC's placement decision into her computer system and/or program, deleted the written notes/memorandum provided to her by a member of the DPRC;

6.   That she knows all of the numbers in terms of children at particular schools receiving particular services, because she has all of that information on some type of master computer program;

7.   That, in the alternative, she scheduled S.P.'s DPRC meeting for either Monday, August 3, 2009, Monday, August 10, 2009, or on Monday, August 17, 2009 where the DPRC, on one of the above-mentioned days, approved and predetermined S.P.'s placement at the ALC program prior to her August 20, 2009 IEP meeting;

8.   That she wrote an e-mail, dated September 26, 2009 @ 5:17 p.m., to Jan Brusca-Special Education Coordinator, where she stated, with respect to S.P., "She was approved by DPRC to be placed in the ALC with Donna Schwartz."

9.   That on September 26, 2009 @ 8:10 p.m., she received an e-mail from Jan Brusca, Special Education Coordinator for the Defendant, that did not contradict her previous

37

1               e-mail, and where Jan Brusca stated that we are awaiting

2               a due process complaint!

3     From an objective review of the e-mail exchange between

4 Phyllis J. Gapen and Special Education Coordinator Brusca, and

5 from Phyllis J. Gapen's deposition testimony, one can extrapolate

6 with a certain degree of accuracy, and arrive at the "opinion"

7 that the Defendant engages in systemic and covert processes that

8 eventually result in the "predetermination" of placement

9 programming for special education students of the Scottsdale

10 Unified School District including S.P.  The Defendant's DPRC

11 membership is exclusive to the Special Education Director, Special

12 Education Coordinator, Lead District Psychologist, and the

13 applicable school psychologist. The DPRC members, of course, must

14 rely upon the administrative assistance and loyalty of long term

15 employees like Phyllis J. Gapen to process and execute their

16 unlawful decisions.

17     In the Plaintiffs' opinion, the members of S.P.'s DPRC then

18 conveniently place themselves on the student's regular IEP team.

19 The DPRC Committee members then purposefully exclude, from

20 consultation or participation, previous members of S.P.'s IEP team

21 from Aztec although they worked at the same school and are

22 available for consultation.  Additionally, the DPRC  members, who

23 also served on S.P.'s August 20, 2009 IEP team, then appoint

24 unsuspecting employees of the Defendant to fill token positions on

25 S.P.'s August 20, 2009 IEP team.  These individuals, while

26 present, clearly realize and understand their position relative to

27 the meeting, and that their superiors are the gatekeepers or

28

decision makers thus granting them great deference.  At the meeting, the senior member of the DPRC, Special Education Coordinator Jan Brusca, then issues the edict of the DPRC while cunningly attempting to justify the decision as the consensus of the overall August 20, 2009 IEP team.

The DPRC's decision, dated either August 3, 2009, August 5, 2009, August 10, 2009, or August 17, 2009 approving and "predetermining" S.P.'s placement at the ALC program not only constitutes a violation of the IDEA, but a travesty and a sham to both S.P. and her parents.  The DPRC's placement decision serves to render the IEP process, the program site visits by the parents, and the parents' participation at the August 20, 2009 IEP meeting meaningless, and a denial of S.P.'s substantive and due process rights accorded to her pursuant to the IDEA.

The Court must hold the Defendant accountable for manipulating the process by approving and predetermining S.P.'s placement at the ALC program prior to her August 20, 2009 IEP meeting.

The Plaintiffs hereby submit that there exists overwhelming proof, based upon the e-mail exchange between Phyllis J. Gapen and Special Education Coordinator Brusca and the deposition testimony of Phyllis J. Gapen, and notwithstanding the other outstanding parts of the administrative record that were inadvertently not filed with the Court, to arrive at the conclusion by a preponderance of the evidence that the Defendant approved and predetermined S.P.'s placement at the ALC program prior to her August 20, 2009 IEP meeting thus denying her a FAPE and rendering

39

the IEP process meaningless.

**E.   THE E-MAIL EXCHANGE BETWEEN PHYLLIS J. GAPEN, SPECIAL EDUCATION TECHNICIAN, AND SPECIAL EDUCATION COORDINATOR BRUSCA, DATED 09/26/2009, SERVES AS PROOF BY A PREPONDERANCE OF THE EVIDENCE THAT THE DEFENDANT APPROVED AND PREDETERMINED S.P.'S PLACEMENT IN THE ALC PROGRAM PRIOR TO HER AUGUST 20, 2009 IEP MEETING IN DIRECT CONTRAVENTION OF THE DEFENDANT'S ANSWERS TO THE PLAINTIFFS' DUE PROCESS COMPLAINT AND THIS INSTANT COMPLAINT.**

Within the Plaintiffs' due process complaint, they alleged that the Defendant had predetermined S.P.'s educational placement in the ALC program, in pertinent part, as follows:

**Due Process Allegation No. 132:** While the Respondent's agenda served the purpose of setting the direction of the discussion, the Petitioners posit that it also clearly served as evidence that the Respondent, and its representatives, Jan Brusca, Dr. Lurie, and Nicole Colaiacovo engaged in discussion(s), meeting(s), telephone conference(s) wherein decisions were made pertaining to S.'s IEP and placement outside of the presence of the Petitioners' and their counsel which resulted in the Respondent "predetermining" S.P.'s placement for the 2009-2010 school year."

**District's Response:** The District denies this allegation. The District did not "pre-determine" S.'s placement. The May 11, 2009 IEP was being implemented the District continued to hold meetings to consider Petitioner's input and review various placement options in light of the information obtained in the independent evaluations.

**Due Process Allegation No. 138**: At the conclusion of the meeting, without having first completed S.P.'s IEP, and obtaining the consensus of the IEP team, Jan Brusca, Special Education Coordinator, in a well coordinated the "predetermined" fashion simply advised the Petitioners that the Respondent's "FAPE" placement offer for S.P. was at the Respondent's "ALC" program located at Laguna Elementary School."

**District's Response**: S.P.'s May 11, 2009 IEP was current at the time of the meeting.  The team discussed S.'s present levels of academic and functional performance and the reports from the independent evaluators.  The team felt that S.'s goals and remained appropriate and that she should receive more intensive services in a small group setting.   The team discussed different placement options, including New Way Academy.   Ultimately, the school members of the IEP determined that given S.'s individualized needs, the consensus of the team was that her needs could be met in the self-contained ALC program at Laguna Elementary School.

**Due Process Allegation No. 140**:  After Jan Brusca, Special Education Coordinator, issued her mandate with regard to the placement for S.P., she did "not" seek the consensus of the remaining members of S.P.'s IEP team to confirm that they also agreed with her unilateral placement decision.

41

**District Response:** The District denies this allegation. Ms. Brusca did not "issue a mandate." The team provided input concerning appropriate placement options for S.

**Due Process Allegation No. 141:** The Respondent's actions and omissions, by and through Jan Brusca, Special Education Coordinator, wherein she failed to obtain the consensus of the members of the IEP team, including the Petitioners, as to whether or not they agreed with her unilateral placement decision constitutes "predetermination" and the denial of "FAPE" for S.P.

**District's Response:** The District denies that it predetermined S.'s placement. Petitioners were provided an opportunity to participate in the IEP process.

**Due Process Allegation No. 146:** The Petitioners, as a result of the Respondent's unilateral placement decision of "ALC" at Laguna Elementary School, without first obtaining the consensus of the IEP team, and which constitutes a denial of "FAPE" for S.P., were compelled to serve the Respondent with a ten (10) day notice letter to withdraw S.P. from Redfield Elementary School on August 21, 209.

District's Response: The District denies that it unilaterally made a placement decision. The District recommended the ALC programming as a placement option after convening an IEP meeting and after considering the input from the Petitioners and the independent evaluators. The District acknowledges that it received a "Ten Day

1   Notice To Withdraw" S; however, the District believed
2   that it provided and continued to offer FAPE to S.
3   Document 22-5, Filed 10/12/12, Pages 1-57; Document 22-11,
4   Filed 10/12/12, Pages 1-27.

5   When the Court juxtaposes the Defendant's and their
6   attorney's answer to the due process complaint as to against the
7   e-mail exchange between Phyllis J. Gapen, Special Education
8   Technician, and Special Education Coordinator Brusca, dated
9   September 26, 2009, it is evident that the Defendant's answers,
10  given under oath, were less than truthful to the ALJ and the
11  Plaintiffs when in fact the Defendant had in its "exclusive
12  possession" the e-mail exchange between Phyllis J. Gapen and Jan
13  Brusca.

14  Compounding the matter, when the Court juxtaposes Phyllis J.
15  Gapen's deposition testimony and the exhibits thereto, it should
16  be extremely troubling to the Court that the Defendant's answers
17  to the due process complaint were not forthcoming when it fact
18  that it had in its "exclusive possession" the e-mail exchange
19  between Phyllis J. Gapen and Special Education Coordinator Brusca.

20  Without even having to review the testimony of Jan Brusca,
21  Birgit Lurie, Lois Healey, or Nicole Colaiacova, it is crystal
22  clear that the e-mail exchange between Phyllis J. Gapen, Special
23  Education Technician, and Jan Brusca, Special Education
24  Coordinator, provides proof by a preponderance of the evidence
25  that the Defendant approved and predetermined S.P.'s placement at
26  the ALC program despite the Defendant's less than forthcoming
27  answers to the due process complaint.

28                          43

1   While the ALJ clearly erred with respect to this issue, this
2   Court is in a position, without even having to conduct an
3   extensive review of this matter, to simply find and declare that
4   the Defendant approved and predetermined S.P.'s placement at the
5   ALC program prior to her August 20, 2009 IEP meeting thereby
6   denying her a FAPE, and rendering the IEP process meaningless.

7   Despite the existence of this damaging e-mail between Phyllis
8   J. Gapen and Special Education Coordinator Brusca, which the
9   Defendant had in its "exclusive possession" at the beginning of
10  the due process compliant, the Defendants denied all of the
11  allegations pertaining to the issue of predetermination within
12  their written answer.  Furthermore, the Defendant continues to
13  deny that predetermination had occurred even during the course of
14  this instant complaint as evidenced by its written answers to the
15  Plaintiff's complaint.

16  **F.   LOIS HEALEY, THE DEFENDANT'S SPECIAL EDUCATION DIRECTOR,
    AND ACCORDING TO THE TESTIMONY OF PHYLLIS J. GAPEN,
17  PARTICIPATED AS A MEMBER OF S.P.'S DPRC, AND AS A
    COROLLARY DIRECTOR HEALEY APPROVED AND PREDETERMINED
18  S.P.'S PLACEMENT AT THE ALC PROGRAM PRIOR TO HER AUGUST
    20, 2009 IEP MEETING AS EVIDENCED BY BOTH PHYLLIS J.
19  GAPEN'S DEPOSITION TESTIMONY, AND THE E-MAIL EXCHANGE
    BETWEEN PHYLLIS J. GAPEN, SPECIAL EDUCATION TECHNICIAN,
20  AND JAN BRUSCA, SPECIAL EDUCATION COORDINATOR, DATED
    09/26/2009 EVIDENCING THE DPRC'S APPROVAL AND
21  PREDETERMINATION OF S.P.'S PLACEMENT AT THE ALC PROGRAM.**

22  During the course of her deposition testimony, Phyllis J.
23  Gapen, Special Education Technician, testified that Lois Healey
24  served as the Defendant's Special Education Director during the
25  2009-2010 school year.  She also testified that the Director
26  Healey attended the DPRC meetings. **See**, Document 21, Filed
27  10/12/12, Pages 1-75.

28                              44

As a corollary, it is posited that Director Healey, as a member of S.P.'s DPRC, participated in the decision making process which led to the Defendant approving and predetermining S.P.'s placement at the ALC program, prior to S.P.'s August 20, 2009 IEP meeting, all in accordance with the e-mail exchange between Phyllis J. Gapen, Special Education Technician, and Jan Brusca, Special Education Coordinator, which reads as follows:

From:    Phyllis J. Gapen

Sent:    Sat 9/26/2009 5:17 PM

To:      Jan Brusca

Subject: S.P.

FYI-S. was withdrawn form (sic) Redfield on 9-4-09 by the parent.  She was approved by DPRC to be placed in the ALC with Donna Schwartz.

From:    "Jan Brusca" <jbrusca@susd.org>

To:      "Phyllis Gapen" <pjgapen@susd.org>

Sent:    Saturday, September 26, 2009 8:10 PM

Subject: S.P.

No, she has not.  Parents enrolled her at New Way and have asked us to pay for it.  We denied that request and are waiting for the due process!

It must be emphasized that Jan Brusca, approximately three (3) hours later, without any attempt to correct, amend, or deny the contents and veracity of the e-mail written by Phyllis J. Gapen, replied as follows:

From:    "Jan Brusca" <jbrusca@susd.org>

To:      "Phyllis Gapen" <pjgapen@susd.org>

45

Sent:      Saturday, September 26, 2009 8:10 PM

Subject:  S.P.

No, she has not.  Parents enrolled her at New Way and have asked us to pay for it.  We denied that request and are waiting for the due process!

Jan Brusca's flippant reply e-mail, dated September 26, 2009, makes no effort to correct, amend, or deny the content of the e-mail because she agreed with the content.  Instead, Special Education Director Brusca took advantage of the opportunity to deliver a flippant response where she stated "No, she has not. Parents enrolled her at New Way and have asked us to pay for it. We denied that request and are awaiting due process!

The Court should grant greater deference to the contents of the e-mail exchange between Phyllis J. Gapen and Jan Brusca, over the Defendant's written denials to the allegations contained in the due process answer.  Likewise, the Court should also grant greater deference to the contents of the e-mail exchange between Phyllis J. Gapen and Jan Brusca over the Defendant's answers to the instant complaint.  The e-mail exchange between the Defendant's own employees was produced contemporaneously or shortly thereafter the August, 2009 series of events, thus has a higher level of veracity because the makers of the e-mail did not have time to reflect and thus told the truth, and because it was believed, in the Plaintiffs' opinion, that the e-mail would never come to light.

While the ALJ completely glossed over these significant facts and arguments, the Plaintiffs request that the Court determine

46

that the ALJ erred as there was a preponderance of the evidence, based upon the e-mail exchange between Phyllis J. Gapen and Jan Brusca, to comfortably arrive at the conclusion that the DPRC approved and predetermined S.P.'s placement at the ALC program prior to August 20, 2009 IEP meeting, and thus denied her a FAPE.

Furthermore, the Court has sufficient evidence, in the form of the above-mentioned e-mail, and now Phyllis J. Gapen's deposition testimony, to easily arrive at the conclusion that there exists by a preponderance of the evidence that Special Education Director Healey served as a member of S.P.'s DPRC, and that she, as a corollary, participated in the decision making process that led to the approval and predetermination of S.P.'s placement at the ALC program prior to her August 20, 2009 IEP meeting.

**G.   NICOLE COLAIACOVO, THE DEFENDANT'S SCHOOL PSYCHOLOGIST, PER THE DEFENDANT'S OWN ADMISSION, PARTICIPATED AS A MEMBER OF S.P.'S DRPC, AND AS A COROLLARY, SHE PARTICIPATED IN THE DECISION MAKING PROCESS THAT LED TO THE DPRC'S APPROVAL AND PREDETERMINATION OF S.P.'S PLACEMENT AT THE ALC PROGRAM DENYING S.P. A FAPE AS EVIDENCED BY BOTH PHYLLIS J. GAPEN'S TESTIMONY AND THE E-MAIL EXCHANGE DATED, 09/26/2009, BETWEEN JAN BRUSCA-SPECIAL EDUCATION COORDINATOR, AND PHYLLIS J. GAPEN, SPECIAL EDUCATION TECHNICIAN, CONFIRMING THAT THE DPRC HAD APPROVED S.P.'S PLACEMENT AT THE ALC PROGRAM.**

The principal point of Plaintiffs' instant complaint pertains to the allegation that the Defendant's DPRC approved and predetermined S.P.'s placement at the ALC program at a DPRC meeting which occurred prior to S.P.'s August 20, 2009 IEP meeting.  According to Jan Brusca's schedule/agenda, and Phyllis J. Gapen's testimony that she scheduled all DPRC meetings, it appears that said DPRC Committee meeting occurred either on

Monday, August 3, 2009, Wednesday, August 5, 2009 approximately
five (5) days prior to the first day of school for S.P., Monday,
August 10, 2009, or on Monday, August 17, 2009.

The Defendant admitted that Psychologist Colaiacovo attended
the DPRC meeting with respect to S.P. which occurred prior to
S.P.'s IEP meeting, and Phyllis J. Gapen stated during her
testimony that Nicole Colaiacova called her to schedule S.P.'s
DPRC meeting.

As a logical corollary, notwithstanding the ALJ's decision
and the Defendant's written denials, it is posited that
Psychologist Colaiacovo participated in the decision making
process, which occurred prior to August 20, 2009, wherein the DPRC
approved and predetermined S.P.'s placement at the ALC program
thereby denying S.P. a FAPE and served to render S.P.'s IEP
process meaningless as evidenced by the e-mail exchange between
Phyllis J. Gapen, Special Education Technician, and Jan Brusca,
Special Education Coordinator, which read as follows:

From:     Phyllis J. Gapen

Sent:     Sat 9/26/2009 5:17 PM

To:       Jan Brusca

Subject:  S.P.

FYI-S. was withdrawn form (sic) Redfield on 9-4-09 by the
parent.  She was approved by DPRC to be placed in the ALC with
Donna Schwartz.

From:     "Jan Brusca" <jbrusca@susd.org>

To:       "Phyllis Gapen" <pjgapen@susd.org>

Sent:     Saturday, September 26, 2009 8:10 PM

Subject:  S.P.

No, she has not.  Parents enrolled her at New Way and have asked us to pay for it.  We denied that request and are waiting for the due process!

The Court should give greater deference to the contemporaneous e-mail exchange between Phyllis J. Gapen and Jan Brusca, dated September 26, 2009 because it occurred within a reasonable time, one month after the DPRC had approved and predetermined S.P.'s placement.  The e-mail exchange between Phyllis J. Gapen and Jan Brusca also occurred without scrutiny and time for reflection as both probably believed that their communication would never come to light.  Lastly, both probably believed that any and all documentary evidence related to the DPRC's  approval and predetermination would either be deleted or shredded, as testified to by Phyllis J. Gapen, and therefore would never been reviewed outside their chambers.

Taking into consideration these facts, the Court can now understand why the Defendant so vigorously fought to exclude Psychologist Colaiacovo from further examination by way of a deposition. **See,** Document 19 (Minute Entry), Filed 09/04/12, Page 1 of 1.

H.  **BIRGIT LURIE, THE DEFENDANT'S LEAD PSYCHOLOGIST, AND AN ALLEGED MEMBER OF S.P.'S DPRC, NOTWITHSTANDING THE DEFENDANT'S WRITTEN ANSWERS TO THE PLEADINGS, APPROVED AND PREDETERMINED S.P.'S PLACEMENT AT THE ALC PROGRAM AS EVIDENCED BY BOTH PHYLLIS J. GAPEN'S DEPOSITION TESTIMONY AND THE E-MAIL EXCHANGE BETWEEN PHYLLIS J. GAPEN, SPECIAL EDUCATION TECHNICIAN, AND JAN BRUSCA-SPECIAL EDUCATION COORDINATOR STATING THAT "SHE (S.P.) WAS APPROVED BY DPRC TO BE PLACED IN THE ALC WITH DONNA SCHWARTZ."**

During the course of the due process matter, and this instant matter, the Defendant, by way of its written answers to the due process complaint and the instant complaint, denied Psychologist Lurie's involvement as it relates to predetermining S.P.'s placement at the ALC program.

However, Phyllis J. Gapen testified during her deposition that the district psychologist was always invited to the DPRC every Monday.  As previously demonstrated in the above-mentioned arguments, the Plaintiffs alleged that Psychologist Lurie served as a member of S.P.'s DPRC.  Given the fact that she was always invited, and that these meetings occurred every Monday, it is posited that she attended S.P.'s DPRC meeting.

If the Court determines that she served as a member of S.P.'s DPRC, then it must juxtapose the Defendant's written denial that the DPRC did not predetermine S.P.'s placement against the following e-mail exchange:

From:     Phyllis J. Gapen

Sent:     Sat 9/26/2009 5:17 PM

To:       Jan Brusca

Subject:  S.P.

FYI-S. was withdrawn form (sic) Redfield on 9-4-09 by the parent.  She was approved by DPRC to be placed in the ALC with Donna Schwartz.

From:     "Jan Brusca" <jbrusca@susd.org>

To:       "Phyllis Gapen" <pjgapen@susd.org>

Sent:     Saturday, September 26, 2009 8:10 PM

Subject:  S.P.

No, she has not.  Parents enrolled her at New Way and have asked us to pay for it.  We denied that request and are waiting for the due process!

Given the existence of the smoking-gun e-mail exchange between Phyllis J. Gapen and Jan Brusca, it is abundantly clear, from the Plaintiff's opinion, why Psychologist Lurie's attorneys vigorously defended her against providing further testimony at a deposition.

While the ALJ clearly overlooked or glossed over this matter within her written decision, the Court and fact finder in this matter must consider the "smoking gun" e-mail exchange between Phyllis J. Gapen and Jan Brusca as un-controverted evidence which proves by a preponderance of the evidence that the DPRC approved and predetermined S.P.'s placement at the ALC program prior to her August 20, 2009 IEP meeting.  The Court then must conclude, as a matter of law, that the DPRC's approval and predetermination of S.P.'s placement at the ALC program amounts to a denial of a FAPE to S.P., the student, and it rendered the IEP process meaningless.

I.  **JAN BRUSCA, THE DEFENDANT'S SPECIAL EDUCATION COORDINATOR, AND A MEMBER OF THE DPRC, APPROVED AND PREDETERMINED S.P.'S PLACEMENT IN THE ALC PROGRAM DENYING S.P. A FAPE AS EVIDENCED BY BOTH PHYLLIS J. GAPEN'S DEPOSITION TESTIMONY AND THE E-MAIL EXCHANGE, DATED SEPTEMBER 26, 2009, BETWEEN PHYLLIS J. GAPEN, SPECIAL EDUCATION TECHNICIAN AND HERSELF AS THE SPECIAL EDUCATION COORDINATOR FOR THE DEFENDANT.**

During the course of the due process matter, the Defendant, within their written answers to the due process complaint, denied that Jan Brusca, the Defendant's Special Education Coordinator, approved and predetermined  and the DPRC did not approve and

predetermine S.P.'s placement at the ALC program.  Interestingly, the Defendant's, while asserting this dubious and tenuous defense, held in their "exclusive possession" the e-mail exchange between Phyllis J. Gapen, Special Education Technician, and Jan Brusca, Special Education Coordinator, which reads as follows:

From:     Phyllis J. Gapen

Sent:     Sat 9/26/2009 5:17 PM

To:       Jan Brusca

Subject:  S.P.

FYI-S. was withdrawn form (sic) Redfield on 9-4-09 by the parent.  She was approved by DPRC to be placed in the ALC with Donna Schwartz.


From:     "Jan Brusca" <jbrusca@susd.org>

To:       "Phyllis Gapen" <pjgapen@susd.org>

Sent:     Saturday, September 26, 2009 8:10 PM

Subject:  S.P.

No, she has not.  Parents enrolled her at New Way and have asked us to pay for it.  We denied that request and are waiting for the due process!

During the course of the due process matter, the Plaintiffs served a subpoena upon Jan Brusca, Special Education Coordinator. **See**, Document 25-1 and Document 25-2. It should be noted to the Court that the IDEA and Arizona law do not provide an aggrieved party in an administrative matter to conduct normal discovery that exists in most civil matters.

The Defendant responded to the Plaintiffs' subpoenas by serving them with an unorganized bunch of papers lacking any table of contents, in the Plaintiffs' opinion, which appeared to not have been reviewed by anyone involved with the litigation. Within the bunch of papers, the Plaintiffs discovered the e-mail exchange, dated September 26, 2009, between Phyllis J. Gapen and Jan Brusca.  Despite the existence of this document, the Defendant continued to rely upon its written denials to the due process complaint at the due process hearing.  Astonishingly, the ALJ erred when it did not even address the significant discrepancy between the Defendant's written pleadings and this e-mail.

Yet, the Defendant today continues to deny that the DPRC approved and predetermined S.P.'s placement at the ALC program. The Defendant's written answers, as both contained in their answers to the due process complaint, and this instant complaint, denying that predetermination occurred when juxtaposed with the e-mail exchange between Phyllis J. Gapen and Jan Brusca deny logic, and serve as a less than forthcoming defense of this matter.

Furthermore, Jan Brusca's, Special Education Coordinator, famous last written words, in response to Phyllis J. Gapen's e-mail, serve as proof by a "preponderance of the evidence" that the Defendant approved and predetermined S.P.'s placement at the ALC program prior to her August 20, 2009 IEP meeting thus denying her a FAPE, and rendering the IEP process meaningless, which is as follows:

From:      Phyllis J. Gapen

Sent:      Sat 9/26/2009 5:17 PM

To:        Jan Brusca

Subject:   S.P.

FYI-S. was withdrawn form (sic) Redfield on 9-4-09 by the parent.  She was approved by DPRC to be placed in the ALC with Donna Schwartz.

From:      "Jan Brusca" <jbrusca@susd.org>

To:        "Phyllis Gapen" <pjgapen@susd.org>

Sent:      Saturday, September 26, 2009 8:10 PM

Subject:   S.P.

No, she has not.  Parents enrolled her at New Way and have asked us to pay for it.  We denied that request and are waiting for the due process!

The only reasonable interpretation of the above-mentioned e-mail exchange is that the DPRC approved S.P. to be placed in the ALC with Donna Schwartz prior to S.P.'s August 20, 2009 IEP meeting. There is no other reasonable interpretation or explanation that can be offered.

As previously mentioned herein, the Defendant's attorney, within the Defendant's answer to allegation #37 of the Plaintiffs' complaint even admitted the truthfulness of the e-mail by stating as follows-"the content of which, speaks for itself."  Translation, the e-mail is truthful.

A review of Jan Brusca's August, 2009 calendar/agenda shows that a DPRC meeting occurred on Wednesday, August 5, 2009, exactly five (5) days before school, or in the alternative, the

DPRC meeting occurred on Monday, August 3, 2009, Monday, August 10, 2009, or on Monday, August 17, 2009.  In any event, the DPRC approved and predetermined S.P.'s placement at the ALC program prior to her August 20, 2009 IEP meeting, and then delivered the mandate to the Plaintiffs at S.P.'s August 20, 2009 IEP meeting. The Defendant thus denied S.P. a FAPE, and rendering the IEP process meaningless.

Given the exposure of the e-mail exchange between Jan Brusca, and Phyllis J. Gapen, and the truthfulness of the e-mail, it is evident, from the Plaintiffs' perspective, as to why the Defendant's attorneys so vigorously opposed any effort to depose her to provide testimony with respect to this issue.

**VII.** <u>**CONCLUSION:**</u>

Over the course of this brief, the Plaintiffs have demonstrated all of the key evidentiary points that the ALJ failed to consider and incorporate into her decision.  While it might be understandable that the ALJ might have erred by missing some of the crucial facts of this case related to predetermination, it is beyond comprehension as to how and why the ALJ completely failed to consider the following e-mail exchange between Phyllis J. Gapen, Special Education Technician and Jan Brusca, Special Education Coordinator, dated September 26, 2009, which proves by a preponderance of evidence that the Defendant approved and predetermined S.P.'s placement at the ALC program, which reads as follows:

```
From:     Phyllis J. Gapen

Sent:     Sat 9/26/2009 5:17 PM

To:       Jan Brusca

Subject:  S.P.
```

FYI-S. was withdrawn form (sic) Redfield on 9-4-09 by the parent.  She was approved by DPRC to be placed in the ALC with Donna Schwartz.

```
From:     "Jan Brusca" <jbrusca@susd.org>

To:       "Phyllis Gapen" <pjgapen@susd.org>

Sent:     Saturday, September 26, 2009 8:10 PM

Subject:  S.P.
```

No, she has not.  Parents enrolled her at New Way and have asked us to pay for it.  We denied that request and are waiting for the due process! Document 21-6, Filed 10/12/12, Page 1 of 1.

It is posited that had the ALJ considered the above-mentioned e-mail exchange, she would have easily arrived at the only possible conclusion that the Defendant, Scottsdale Unified School District, approved and predetermined S.P.'s placement at the ALC program prior to her August 20, 2009 IEP meeting. Accordingly, the ALJ would also have determined that the Defendant's action(s) approving S.P.'s placement at the ALC program constituted predetermination denying S.P. a FAPE, and thus rendered the IEP process meaningless warranting monetary damages.

The greatest travesty is that the members of the Defendant's DPRC Special Education Director Healey, Special Education Coordinator Brusca (Invited), District Psychologist Lurie

(Invited), and School Psychologist Colaiacovo's approval of S.P.'s placement at the ALC program prior to her August 20, 2009 IEP meeting not only constitutes predetermination and a denial of a FAPE for S.P., but their unlawful and unethical placement decision caused the due process complaint, caused this instant lawsuit, caused the District thousands of dollars in costs and attorney's fees, caused the District thousands of dollars in terms of paying teachers for time out of the classroom to provide testimony, cost the District thousands of dollars to pay for substitute providers, caused the citizens and taxpayers of Arizona thousands of dollars to cover the cost of the ALJ and her staff members, caused a mockery of the special education due process system, caused the Plaintiffs to pull their daughter out of the Defendant's school district, caused the Plaintiffs to spend thousands of dollars to pay for S.P.'s special education program at New Way, caused the Plaintiffs to spend thousands of dollars to transport S.P. back and forth to New Way, caused the Plaintiffs' attorney to allocate hundreds of hours to this matter, but more importantly, they caused an innocent student, S.P., the opportunity to have a FAPE.

Wherefore, the Plaintiffs respectfully request that the Court order as follows:

1.   That the ALJ erred by not even taking into consideration the e-mail exchange, dated September 26, 2009 between Phyllis J. Gapen, Special Education Technician and Jan Brusca, Special Education Coordinator, which reads as follows:

57

```
From:      Phyllis J. Gapen

Sent:      Sat 9/26/2009 5:17 PM

To:        Jan Brusca

Subject:   S.P.
```

FYI-S. was withdrawn form (sic) Redfield on 9-4-09 by the parent. She was approved by DPRC to be placed in the ALC with Donna Schwartz.

```
From:      "Jan Brusca" <jbrusca@susd.org>

To:        "Phyllis Gapen" <pjgapen@susd.org>

Sent:      Saturday, September 26, 2009 8:10 PM

Subject:   S.P.
```

No, she has not.  Parents enrolled her at New Way and have asked us to pay for it.  We denied that request and are waiting for the due process!

about August 5, 2009;

2.   That the ALJ erred by not arriving at the only plausible conclusion that the DRPC engaged in predetermination thus denying S.P. a FAPE;

3.   That the DPRC engaged in predetermination when they approved S.P.'s placement at the ALC program prior to her August 20, 2009 IEP meeting;

4.   That the DRPC's predetermined decision caused the Plaintiffs' participation in the IEP process to be meaningless;

5.   That the Plaintiffs be awarded their equitable expenses related to S.P.'s educational program at New Way;

6.   That S.P. and the Plaintiffs be awarded their associated costs related to the prosecution of the due process case and the instant matter;

7.   That the Plaintiffs be awarded their transportation costs related to taking S.P. from her home to New Way and the return trip;

8.   That the Court enter an appropriate and equitable order against the Defendant preventing it from ever again engaging in predetermination of placement(s);

9.   For such other further relief as is just and necessary under the circumstances.


RESPECTFULLY SUBMITTED this 25th Day of February, 2013.


/s/ Jose Luis Peñalosa, Jr., #14000
**Jose Luis Peñalosa, Jr.**
**Attorney for Plaintiffs**

59

CERTIFICATE OF SERVICE

I, Jose Luis Peñalosa, Jr., hereby certify that on February 25th, 2013, I electronically transmitted the attached document, Plaintiffs' Opening Brief, to the Clerk's Office using the CM/ECF system for filing and transmitted a copy of the following CM/ECF Registrant with respect to this case:

David S. Schwartz, Esq.
UDALL SHUMWAY
1138 North Alma School Road, Suite 101
Mesa, Arizona 85201
Attorney for Defendant SUSD

Jessica S. Sanchez, Esq.
UDALL SHUMWAY
1138 North Alma School Road, Suite 101
Mesa, Arizona 85201
Attorney for Defendant SUSD


/s/ Jose Luis Peñalosa, Jr.

60