**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| **S.P., Student By and Through Jose Luis Penalosa, Jr. and Nora F. Penalosa, Parents,** | ) ) ) | |
| **Plaintiffs,** | ) ) | **2:12-cv-01193 JWS** |
| **vs.** | ) ) | **ORDER AND OPINION ON APPEAL FROM ALJ DECISION IN AZ** |
| **Scottsdale Unified School District No. 48,** | ) ) ) | **OFFICE OF ADMINISTRATIVE HEARING, CASE NO. 12C-DP-006-ADE** |
| **Defendant.** | ) ) | |

## I.  APPEAL PRESENTED

Plaintiffs Jose Luis Penalosa and Nora F. Penalosa ("Plaintiffs"), as and for their

daughter S.P. ("Student"), filed the complaint at docket 1, pursuant to 20 U.S.C.

§ 1415(i)(2), after an Administrative Law Judge ("the ALJ") with the Arizona Office of

Administrative Hearing dismissed Plaintiffs' complaint against defendant Scottsdale

Unified School District No. 48 ("the District"), which alleged that the District violated the

Individuals with Disabilities Education Act ("the IDEA") by not providing Student with a

free and appropriate public education.  This civil action followed.  Plaintiffs' opening

brief is at docket 38.  In the brief, Plaintiffs raise two issues for the court's consideration:

(1) whether the administrative law judge erred by failing to provide a ruling on the issue

of whether Student was denied a free and appropriate public education while Student

was enrolled at Redfield Elementary School in violation of her individualized plan and
(2) whether the ALJ erred by concluding that the District did not predetermine Student's
placement at a meeting of the District Placement Review Committee.  The District's
response is at docket 41.  Plaintiffs' reply is at docket 42.

## II. IDEA

The purpose of the IDEA[1] is "to ensure that all children with disabilities have
available to them a free appropriate public education that emphasizes special education
and related services designed to meet their unique needs . . . ."[2]  In order to make sure
all children with disabilities receive this free appropriate public education ("FAPE"), the
statute sets up a cooperative process between parents and schools whereby an
individualized educational plan ("IEP") is developed for each student with a disability.[3]
A procedural violation by a school district that "significantly impede[s] the parents'
opportunity to participate in the decisionmaking process" regarding their child's IEP can
result in a denial of the right to receive a FAPE.[4]  If parents believe their child's IEP is
inappropriate or that their child is not receiving the appropriate education, they may
request an "impartial due process hearing."[5]  Any party "aggrieved by the findings and
decision" made during the administrative due process hearing can bring a civil action in
state or federal court.[6]

---

[1] 20 U.S.C. § 1400, *et seq.*

[2] 20 U.S.C. § 1400(d)(1)(A).

[3] *Schaffer v. Weast*, 546 U.S. 49, 53 (2005).

[4] 20 U.S.C. § 1415(f)(3)(E)(ii).

[5] 20 U.S.C. § 1415 (f).

[6] 20 U.S.C. § 1415(i)(2).

1

2

3

4

### III.  BACKGROUND

The background to this case is set forth in detail in the ALJ's decision at docket 30.  Only those facts necessary for context and relevant to the issues presented in the opening brief will be discussed here.

At the time Plaintiffs' notice of complaint was filed with the District, Student was an eight-year-old child that the District had determined was eligible for special education services based upon her learning disability and her speech and language impairment.  During the 2008-2009 academic year, Student was enrolled in Kindergarten at Aztec Elementary School and received special education services through the learning resource center at that school.  Near the end of the 2008-2009 school year, on May 11, 2009, Student's IEP team, which by law included Plaintiffs,[7] met to discuss Student's IEP for the next year.  At that time, at Plaintiffs' request, Student was scheduled to obtain speech and psychoeducational evaluations from independent experts, and the IEP team formulated a plan for Student to the extent that they could, but agreed to meet again after the experts' evaluations were complete and their reports were received.

During the summer of 2009, Plaintiffs enrolled Student in a private summer program at New Way Learning Academy ("the New Way School").  Plaintiffs provided the District with Student's speech and psychoeducational reports from the independent experts on July 29, 2009.

On August 10, 2009, the first day of the 2009-2010 academic year, Student enrolled at her new home school, Redfield Elementary School ("Redfield").  Her IEP team met that day to discuss the experts' reports and consider changes to Student's IEP.  Plaintiffs informed the District about Student's success at the New Way School, and the IEP team discussed possible special education programs within the District that would meet the experts' recommendations for Student.  Two other programs, the ABC

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____

[7]20 U.S.C. § 1414(d)(1)(B).

program at Sequoya Elementary School and the ALC program at Laguna Elementary School, were discussed.  District officials made arrangements for Plaintiffs to visit these two programs between August 12, 2009 and August 14, 2009.

At some point between the August 10, 2009, IEP team meeting and the visits, the District Placement Review Committee ("DPRC") met and discussed Student's placement options.  According to the ALJ's statement of facts, the school psychologist, the lead psychologist, the special education coordinator, and the former special education director met and discussed the District's various self-contained special education programs in terms of availability and to determine which of the programs could be appropriate for Student.  During that time frame, in correspondence dated August 14, 2009, Plaintiffs indicated to the District that they were concerned that Student had not been receiving the necessary speech and language therapy since school started on August 10, 2009.

On August 20, 2009, the IEP team reconvened and met for two hours.  Plaintiffs requested that Student be placed at the New Way School at the District's expense.  Based on the ALJ's findings of fact, during this meeting, the IEP team discussed and considered the experts' reports, the recommendations in those reports, reading programs, the various special education environments available within the District's schools, and the New Way School.  At the end of the meeting, the special education coordinator for the District indicated that the District's offer of placement would be the ALC program at Laguna Elementary, not the New Way School.  The next day, the District issued an official written notice that stated it was offering Student a placement at ALC as part of her IEP and explained how placement at ALC met Student's needs based on the recommendations set forth in the experts' reports.  It also issued a written notice that stated it would not place Student at the private New Way School at District expense, explaining that the District's ALC program was an appropriate program for Student.  That same day, Plaintiffs notified the District that they were going to withdraw Student from Redfield on September 4, 2009, and enroll her at the New Way School,

1   indicating their disapproval of the offered placement.  On August 25, 2009,  the District

2   responded to Plaintiffs, stating again that it was refusing to place Student at the New

3   Way School.  Plaintiffs withdrew Student on September 4, 2009, as planned and

4   enrolled her at the New Way School.

5   On August 18, 2011, Plaintiffs filed a due process complaint with the Arizona

6   Office of Administrative Hearings.  The complaint raised three counts: Count I alleged a

7   violation of state administrative law; Count II alleged that the District violated the IDEA

8   when it failed to timely complete an IEP for the 2009-2010 school year at the May 11,

9   2009 meeting; and Count III alleged that the District improperly predetermined

10   Student's placement at ALC.[8]  The ALJ dismissed Count I as not being properly before

11   the tribunal and dismissed Count II, which related to the May 11, 2009 IEP meeting, as

12   time barred under the two-year statute of limitations.[9]  The ALJ concluded that Plaintiffs'

13   Count III, "relating to disagreement of FAPE offered or provided through Student's

14   August 20, 2009 IEP and the allegations of predetermination," should proceed to a

15   hearing.[10]  The due process hearing took place over four days, February 22, 23, 24, and

16   28 of 2012.  Plaintiffs called eleven witnesses during the hearing; the District called five

17   additional witnesses.[11]  Plaintiffs also presented four notebooks of exhibits.[12]  The ALJ

18   documented each exhibit introduced and referenced at the hearing.[13]  On May 1, 2011,

19   the ALJ issued her decision, denying Plaintiffs' relief.  The ALJ specifically noted that

20

21

22

23   [8]Doc. 30 at p. 15.

24   [9]Doc. 30 at pp. 17-18.

25   [10]Doc. 30 at 19.

26   [11]Doc. 30 at pp. 1-2.

27   [12]Doc. 26; Doc. 30 at pp. 3-4.

28   [13]Doc. 29.

1  she considered each witness-referenced exhibit and the testimony of every witness,
2  even if such evidence had not been specifically mentioned in her written opinion.[14]

3  ## IV.  STANDARD OF REVIEW

4       In any civil action brought pursuant to 20 U.S.C. § 1415(i), the district court must
5  consider the records of the administrative proceedings, hear additional evidence at the
6  request of a party, and grant the appropriate relief based on the preponderance of the
7  evidence.[15]  The burden of persuasion in an administrative hearing challenging an IEP
8  rests on the party seeking relief.[16]

9       "In IDEA cases, unlike other cases reviewing administrative action, we do not
10  employ a highly deferential standard of review.  Nevertheless, complete *de novo* review
11  is inappropriate."[17]  The court gives "due weight" to the state administrative
12  proceedings, especially when there are "thorough and careful administrative findings."[18]
13  An ALJ's findings are considered thorough and careful in situations like the one here
14  where the hearing is not rushed, the ALJ is engaged in the hearing to ensure the record
15  is complete, and the ALJ's decision "contains a complete factual background as well as
16  a discrete analysis supporting the ultimate conclusions."[19]

17
18
19
20
21
_____

22  [14]Doc. 30 at p. 4, n. 22.

23  [15]20 U.S.C. § 1415(i)(2)(C).

24  [16]*Schaffer*, 546 U.S. at 51, 62.

25  [17]*J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 949 (9th Cir. 2009) (quoting *JG v.*
26  *Douglas County Sch. Dist.*, 552 F.3d 786, 793 (9th Cir. 2008)) (internal quotations omitted).

27  [18]*Id.* (internal quotation marks omitted).

28  [19]*Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1031 (9th Cir. 2006).

1

**V.  DISCUSSION**

2

**A. Denial of FAPE while at Redfield**

3

4

5

6

7

8

9

The first issue Plaintiffs raise in their opening brief is whether the ALJ failed to provide a ruling as to whether Student received a FAPE while she was enrolled at Redfield from August 10, 2009, through September 4, 2009.  Plaintiffs assert that Student did not receive her required FAPE because she was not provided necessary speech and language services during this time.  The District argues that Plaintiffs failed to raise this issue at the due process hearing and, alternatively, that there is no evidence in the record to support the alleged violation.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

A plaintiff alleging violations of the IDEA and seeking remedies pursuant to that statute must exhaust administrative remedies before bringing a civil action in federal court.[20]  Plaintiffs argue that they raised this issue at the due process hearing, citing paragraph 116 of their August 18, 2011 Complaint.  However, a review of that paragraph does not support Plaintiffs' argument.  That paragraph provides background information, where Plaintiffs mention that they voiced concerns over Student's speech and language services during the initial days of the 2009-2010 school year when Student was enrolled at Redfield and when Plaintiffs and the District were considering other options for Student.[21]  That information was provided as background and was relevant to Plaintiffs' overarching claim that the May 11, 2009 IEP was incomplete; it was not framed as an independent substantive violation of the IDEA.  Later in the Complaint, Plaintiffs set forth their substantive claims against the District and did not include any allegations with respect to the provision of speech and language services while Student was enrolled at Redfield.[22]  Moreover, Plaintiffs failed to include any allegations with respect to such a claim in their summary of issues, which was provided

25

26

[20]*Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 867 (9th Cir. 2011); 20 U.S.C. § 1415(l).

27

[21]Doc. 22-5 at pp. 34-35.

28

[22]Doc. 22-5 at pp. 47-56.

1   to the ALJ before the due process hearing.[23]  Indeed, the ALJ noted that Plaintiffs'

2   complaint "raised no substantive issues regarding the special education services or

3   related services either proposed or set forth in either the May 2009 or August 2009

4   IEP."[24]  Plaintiffs' failure to exhaust the issue of Student's speech and language

5   services while enrolled at Redfield at the administrative level bars the court from

6   considering the issue.

7   **B. Predetermination of Student's placement**

8           Plaintiffs' primary ground for relief relates to the issue of predetermination.

9   Plaintiffs argue that the ALJ erred by concluding that the District did not improperly

10  predetermine Student's placement before the August 20, 2009 IEP meeting.

11  "Predetermination occurs when an educational agency has made its determination prior

12  to the IEP meeting, including when it presents one placement option at the meeting and

13  is unwilling to consider other alternatives."[25]  Predetermination is a violation of the IDEA

14  because educational placement decisions must be based on the IEP, and under the

15  IDEA parents must be provided the opportunity to participate in meetings with respect

16  to developing the IEP.[26]

17          In *H.B. v. Las Virgenes Unified School District*,[27] an unpublished decision, the

18  Ninth Circuit declined to decide whether it was predetermination to take an autistic child

19  from his private school and place him in a public school program for autistic children,

20  even when the evidence showed the district came to the IEP meeting with a firm

21

22          [23]Doc. 22-13.

23

24          [24]Doc. 30 at 2-3, n.15.

25          [25]*Z.F. v. Ripon Unified Sch. Dist.,* No. 2:11-CV-02741, 2013 WL 127662, at * 6 (E.D.
    Cal. Jan. 9, 2013) (citing *Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 858 (6th Cir.
26  2004)).

27          [26]*Id.* (citing applicable case law).

28          [27]239 Fed.Appx. 342 (9th Cir. 2007).

                                        -8-

1    opinion about where the student should be placed and the parents did not give any

2    input.[28]  The court noted that while the district clearly had an opinion that the student

3    should be placed in the public school program instead of being publicly-funded at a

4    private school, that opinion did not "necessarily establish that the School District was

5    unwilling to consider other placements."[29]  It remanded the case back to the district

6    court to supplement the record regarding whether the school was unwilling to consider

7    alternatives and whether the parents sought to meaningfully participate in the

8    placement decision.[30]  Thus, the required inquiry in a predetermination case should

9    focus on the school district's motivation and intent.  As the Ninth Circuit stated in *Las*

10   *Virgenes,* "[a]lthough an educational agency is not required to accede to parents'

11   desired placement, it must maintain an open mind about placement decisions and be

12   willing to consider a placement proposed by the parents."[31]

13       Here, the ALJ's findings support the conclusion that Plaintiffs meaningfully

14   participated in the development of Student's IEP, including the decision about Student's

15   placement, and that the District was willing to consider Plaintiffs' desired placement at

16   the private New Way school.  For instance, the ALJ found that Plaintiffs, as well as their

17   educational advocate, participated in two IEP meetings in August of 2009.[32]  She found

18   that the District set up site visits for Plaintiffs at the various special education programs

19   available within the District.[33]  She found that the results of Student's independent

20   evaluations were considered at both IEP meetings and taken into account when the

21

22   _____

23   [28]*Id.*

24   [29]*Id.* at 345.

25   [30]*Id.*

26   [31]*Id.*

27   [32]Doc. 30 at pp. 12, 24

28   [33]Doc. 30 at pp. 10-11.

1   District formulated Student's IEP and its placement offer.[34]  She found that Ms. Jan

2   Brusca, the District's representative with authority to commit resources in the event the

3   IEP team decided a private school placement was appropriate, was present at the

4   August 20, 2013.[35]  She concluded that the IEP team considered the various special

5   education programs within the District and the New Way School and that the District did

6   not decide on Student's placement at a DPRC meeting held sometime between

7   August 10, 2009 and August 20, 2009.[36]

8       Plaintiffs only challenge one of these factual findings.  They argue that the ALJ

9   incorrectly determined that the District did not decide Student's placement at the DPRC

10  meeting when Plaintiffs were not present.  The ALJ's opinion makes clear that this

11  finding is based on the testimony of the DPRC participants, each of whom testified

12  during the hearing that these meetings are preparatory in nature and that at DPRC

13  meetings staff members discuss the various special education programs in terms of

14  availability, make-up of the students enrolled, and staffing to determine which of the

15  programs could be an appropriate placement for a student.[37]  Plaintiffs did not provide

16  the court with a transcript of the hearing despite being given additional time to do so,

17  and, therefore, the court cannot conclude that the ALJ was mistaken as to the

18  testimony.

19      Plaintiffs argue that there is evidence in the record that the ALJ overlooked that

20  proves the District predetermined Student's placement at the DPRC meeting.  The

21  evidence to which Plaintiffs refer is an email exchange in the record dated

22  September 26, 2009, between Jan Brusca, the District's special education coordinator,

23

24  _____

25  [34]Doc. 30 at pp. 10, 12, 21, 24.

26  [35]Doc. 30 at p. 12, n.50.

27  [36]Doc. 30 at pp. 10-11, 12, 21, 24-26.

28  [37]Doc. 30 at p. 25.

and Phyllis Gapen, the District's special education technician.  In that email, Ms. Gapen
states as follows:

> FYI- [Student] was withdrawn from Redfield on 9-4-09 by the parent.  She
> was approved by DPRC to be placed in the ALC with Donna Schwartz.[38]

Ms. Brusca wrote back later that day, stating as follows:

> No she has not.  Parents enrolled her at New Way and have asked us to pay
> for it.  We denied that request and are waiting for the due process![39]

Plaintiffs assert that this email proves that the District made a placement decision for
Student—approving her for the ALC program with Donna Schwartz—at a DPRC
meeting without their input.  Plaintiffs focus on Ms. Gapen's use of the word "approved,"
arguing that this is definite proof of predetermination that the ALJ should have
considered.

      Contrary to Plaintiffs' argument, the ALJ's decision regarding the DPRC meeting
was made in light of this email.  As the ALJ was careful to note, she considered all of
the testimony and all of the witness-referenced exhibits, even if she did not specifically
reference them in her opinion.[40]  Plaintiffs included the email in their list of exhibits
before the hearing,[41] and it is clear that the email was introduced and referenced during
the hearing as the ALJ included it in her exhibit log.[42]  Thus, the ALJ considered the
email and nonetheless concluded that the District did not make any final placement
decisions at the DPRC meeting.

      The ALJ's conclusion is correct.  While parents must be given an opportunity to
participate in meetings with respect to the formulation of a student's IEP, the regulation
implementing the IDEA allows school agencies to engage in preparatory activities to

---

[38]Doc. 21-6.

[39]*Id.*

[40]Doc. 30 at p. 4, n. 22

[41]Doc. 26 at pp. 4 (Notebook 1, Tab 19), 11 (Notebook 1, Tab 92).

[42]Doc. 29 at pp. 7-8 (referencing exhibit 1-92, which is the email in question).

1    develop a proposal or a response to a parent proposal that will be discussed at a later

2    IEP team meeting.[43]  Indeed, the Sixth Circuit has held that a school agency can

3    prepare for an IEP meeting and develop a proposal that it believes is best for a student:

4    "Federal law prohibits a completed IEP from being presented at the IEP Team meeting

5    or being otherwise forced on the parents, but states that school evaluators may prepare

6    reports and come with pre-formed opinions regarding the best course of action for the

7    child as long as they are willing to listen to the parents and parents have the opportunity

8    to make objections and suggestions."[44]  At most then, Ms. Gapen's email suggests that

9    the DPRC met and came up with a proposed placement for Student that the District

10   planned to discuss with Plaintiffs at the full IEP meeting on August 20, 2009.  Such a

11   pre-formed opinion is not necessarily predetermination; there must be more evidence

12   before the court could conclude that the District was unwilling to consider Plaintiffs'

13   proposed placement at the New Way School.  Given the other undisputed facts about

14   the August 20, 2009 meeting set forth above, it is clear that the District maintained an

15   open mind at the IEP meeting and discussed all available programs, including the New

16   Way School.

17         Pursuant to 20 U.S.C. § 1415(e)(2), which allows the court to hear additional

18   evidence not in the administrative record, Plaintiffs took the deposition of Ms. Gapen in

19   order to ask her about the email and the DPRC meeting referenced in that email.  A

20   copy of that deposition is filed at docket 21.  The District argues that the court should

21   not consider this additional evidence.  However, the court already allowed the

22   deposition to proceed [45] and has fully reviewed and considered such evidence, but finds

23   that it does not prove predetermination or otherwise support Plaintiffs' argument.

24   Ms. Gapen testified that she does not attend DPRC meetings and was not at the

25

26        [43]34 C.F.R. § 300.501(b)(3).

27        [44]*Nack v. Orange City Sch. Dist.*, 454 F.3d 604, 610 (6th Cir. 2006).

28        [45]Doc. 17.

-12-

1 meeting in question.[46]  Instead, she keeps track of DPRC recommendations and final

2 IEP decisions so that she "can keep better track of the numbers for the different

3 [special education] programs."[47]  She explained that there are times when the final IEP

4 placement decision is different than the proposal by the DPRC.[48]  She testified that the

5 DPRC does not make final placement decisions.[49]  Consistent with the ALJ's findings,

6 she explained that the DPRC meetings are held to discuss availability in the special

7 education programs and placement options available to students.[50]  As to the

8 September 26, 2009 email exchange with Ms. Brusca, she testified that she wrote the

9 email merely to alert Ms. Brusca of available space at ALC given that Student had not

10 enrolled there.[51]  She explained that she used the word "approved" to mean that ALC

11 was approved as an option for the IEP team to consider.[52]  Despite Plaintiffs' arguments

12 to the contrary, this is not an untenable position.  The ALC program was approved as

13 the District's proposal for Student's placement.  Ms. Gapen's email and her testimony

14 regarding the email does not prove that the District was putting forth a "take it or leave

15 it" proposition to the parents or that it was unwilling to consider other options.  Indeed,

16 as discussed above, the ALJ concluded that the IEP team spent two hours discussing

17 all the possible programs, including Plaintiffs' preferred option, the New Way School,

18 during the August 20, 2009 meeting.

19

20

21

22 [46]Doc. 21 at p. 13.

23 [47]Doc. 21 at pp.62-63.

24 [48]Doc. 21 at p. 62.

25 [49]Doc. 21 at p. 62.

26 [50]Doc. 21 at p. 65.

27 [51]Doc. 21 at pp. 10, 16.

28 [52]Doc. 21 at pp. 12, 62.

## VI.  CONCLUSION

Based on the foregoing, the court affirms the ALJ's decision as supported by the preponderance of the evidence.

DATED this 15th day of October 2013.


_____
/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE